GUSTAV W. LEMBECK v. FREDERICK GERKEN.

Argued November 7th, 1913—Decided April 24th, 1914.

1. For the plaintiff to recover on an action for deceit, he must prove that the defendant made a representation to him, with intention that he should act thereon, that the representation was false, that the defendant when he made it knew it to be false, and that the plaintiff believing the representation to be true acted on it to his injury.

2. A representation to form the basis of an action of deceit must be material to the subject-matter, and relate to some existent fact.

3. Where the vendor stated that he was not then seized of the formal legal title to a strip of land adjacent to the land described in the contract, but that the Court of Chancery, in a suit then recently decided, declared that he was the owner thereof, and that he would include the strip in the conveyance, at which time he expected to be invested with the legal title thereto, was not a representation that he was the then owner of the strip clothed with the legal right to convey, and, though false, could not form the basis of an action for deceit.

4. Where it appeared that the contract described the land to be conveyed by metes and bounds, and did not include an adjacent strip, to which the vendor had represented that he would acquire the legal title and include in the conveyance to be made, and before the time arrived for the making of the conveyance the purchaser procured an examination of the title of the vendor, and was advised that the vendor did not have title to such strip, but notwithstanding such information completed the purchase and accepted a deed which did not include the adjacent strip which the vendor had promised to include in the conveyance—*Held*, that the vendee did not rely on any false representation by the vendor as to his ownership so as to sustain an action for deceit, and that the vendee, by accepting such conveyance, waived any right of action for the deceit of the vendor based upon such representation.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the rule, *E. A. & W. T. Day* and *H. Aplington.*

*Contra, McDermott & Enright.*

The opinion of the court was delivered by

KALISCH, J. The defendant seeks a new trial in this case chiefly for the reason that under the law applicable to the undisputed facts therein, the trial judge should have ordered a nonsuit or directed a verdict for the defendant. The trial resulted in a verdict for the plaintiff for $6,000. The action was one for deceit. The defendant made a contract with one Matthew F. Smith, the undisclosed agent of the plaintiff, whereby the defendant agreed to convey to Smith a block of land, designated as block 26 on a map of the Atlantic Coast

Realty Company at Deal Beach, upon which was erected a hotel and twelve cottages for $53,000. At the time of the making of the contract Smith's agency was not disclosed to the defendant. The block of land which gives rise to this controversy is bounded on the four sides by public streets. The street bounding the property on the north is a wide parkway known as Deal Esplanade. The map and uncontroverted testimony tend to establish that there is a park laid out with grass, trees and shrubbery, upon which the property abuts, extending from a hedge line to the roadway. It is conceded that the park had been dedicated to the public. The contract of sale described the premises by metes and bounds, which description does not include any portion of the park; nor did the deed subsequently made in execution of the agreement.

The gravamen of the plaintiff's declaration is that before the contract for the purchase and sale of the property was reduced to writing, or any part of the purchase price paid, defendant stated and represented to Smith, the plaintiff's agent, that all of the land comprising the block extending to a hedge line along the Esplanade was included in the proposed sale, and that he would convey it in accordance with his agreement for the selling price, $53,000, but that he could not include the strip approximately fifty feet in width along the northerly side of the block marked "parking" upon a certain map of property of the Atlantic Coast Realty Company, for the reason that he was not then seized of the formal legal title to the strip, but that the courts had already held that he was the lawful owner of the strip in a suit then recently decided by the Court of Chancery of New Jersey; that he spent thousands of dollars in the suit to establish his ownership, and that though he did not yet have the title, that he was a man of his word, and could be relied upon to carry out the understanding, and that at the time fixed for passing title, he would be in a position to convey the entire tract, including the strip extending to the sidewalk of the Esplanade for the agreed price of $53,000; that these statements and representations were made, by the defendant to the plaintiff's agent, for the purpose of inducing plaintiff to purchase the property for the

sum mentioned; that the plaintiff's agent relying upon the representations and believing them to be true, entered into a contract for the purchase of the same, &c., then follows the averment that the statements and representations made by the defendant were untrue and were false and fraudulent, and were made with the intent to defraud and deceive the plaintiff through the plaintiff's agent. The principle on which an action for deceit is founded requires the presence of three things—*first,* that the defendant made some representation to the plaintiff, meaning that he should act upon it; *second,* that such representation was false, and that the defendant, when he made it, knew it to be false; *third,* that the plaintiff, believing such representation to be true, acted upon it, and was thereby injured. *Byard* v. *Holmes,* 34 *N. J. L.* 296; *Cowley* v. *Smith,* 46 *Id.* 380; *Thompson* v. *Koewing,* 79 *Id.* 246.

The first reason urged for setting aside the verdict is that the misrepresentation relied on in the declaration and testimony was not of an existent fact, but was in relation to a future event.

There is no legal principle more firmly rooted in the law that a representation, in order to form the basis of an action of deceit, must be material to the subject-matter of the contract and relate to some existent fact. *Byard* v. *Holmes,* 34 *N. J. L.* 298. If it merely affect the probability that it will be kept, *i. e.,* some assurance what shall thereafter be done, or as to any further event, it is not a representation but a contract for the violation of which a remedy must be sought on the contract. *Dawe* v. *Morris,* 149 *Mass.* 188; 4 *L. R. A.* 158.

The statement attributed to the defendant that he was not then seized of the formal legal title to the strip, but that the Court of Chancery, in a suit then recently decided, declared that he was the owner of the strip and the defendant's promise that he would include it in the conveyance to be made, by which time he expected to be invested with the legal title thereto, was not a representation that he was the then owner of the strip clothed with the present legal right to convey, but rather

an opinion that he would be clothed with the legal title, and when that event happened, which was to be on or before the delivery of the deed, he would convey the same to the plaintiff.

It is to be observed that the language of the statement expressly negatives any present right to convey.

It is also apparent that if the defendant's representation that he had been declared to be the owner of the strip were separated from his promise to convey it when the legal title thereto would become vested in him, the representation would be quite unimportant and immaterial.

The mere fact that the plaintiff was the owner of the property without the legal right to convey, surely, could not be said to have been any inducement to the plaintiff to purchase the block. The inducement to the plaintiff was the defendant's promise to convey the strip of land to him.

It was a matter of no consequence to whom the strip of land actually belonged at the time the defendant's statement was made so long as there was the defendant's promise to convey it to the plaintiff.

It was the defendant's promise to convey the strip which must have formed the basis of the inducement to the plaintiff to make the purchase. It is quite self-evident that if the defendant had acquired title to the strip at any time before the deed was given to the plaintiff, and refused to include the strip in the conveyance, the fact that he had falsely represented before the contract was entered into, that he was the owner of the strip, would not be sufficient to support an action of deceit.

This distinction above alluded to appears to have been recognized in *Byard* v. *Holmes*, 34 *N. J. L.* 300. In *Dawe* v. *Morris, supra,* the plaintiff averred that he was induced to enter into a contract for building thirty miles of the Florida Midland railway by a representation made by the defendant that he, the defendant, had purchased a certain quantity of rails, at a certain price, and that he would sell those rails to the plaintiff at the same price, if he would make such a contract. The declaration further alleged that the defendant had not then purchased the rails and did not sell and did not in-

tend to sell any rails so purchased by the plaintiff; and that by reason of the contract into which the plaintiff was induced to enter he was obliged to purchase a larger number of rails at a much higher price, &c.

It is to be observed that in this case the representation relied on was made by one who was not a party to the contract, and it is only in this respect that the case differs from the one at bar. The principle governing, however, is the same.

Mr. Justice Devens, in delivering the opinion in the case quoted, in 4 *L. R. A.* (on *p.* 160), said: "A representation, in order that, if material and false, it may form the ground of an action where one had been induced to act by reason thereof, should be one of some existing fact. A statement promising in its character that one thereafter will sell goods at a particular price or time, will pay money, or do any similar thing, or any assurance as to what shall thereafter be done, or as to any further event, is not properly a representation, but a contract for the violation of which a remedy is to be sought by action thereon." * * * "The plaintiff contends that even if this is so, the representation that the defendant had then purchased the rails at the price named was material and false; but if the allegation that the defendant had purchased the rails be separated from that of the promise to sell them to the plaintiff, it is seen at once to be quite unimportant and immaterial.

"Had the defendant actually sold, or had he been ready to sell, the rails at the time and price he promised that he would, no action could have been maintained by reason of any false representation that he had purchased them, when he made his promise, and no possible injury could thereby have resulted to the plaintiff."

We think these views are sound and are applicable to the statements made by the defendant in the case *sub judice* and lead us to the conclusion that those statements are insufficient to support an action of deceit, and that a nonsuit should have been ordered.

But even if it be assumed that the statement was a fraudulent misrepresentation, and was made, as claimed by the

plaintiff, it is evident from his own testimony that he was not led into making the contract for the purchase of the block by reason thereof. On his cross-examination he said:

"*Q.* When the title came to be taken to that land, you had Mr. Blankenhorn examine the title?

"*A.* Yes.

"*Q.* And you were advised by him that not only did Mr. Gerken not have title but he never could get title?

"*A.* That is what Mr. Blankenhorn said.

"*Q.* Notwithstanding that you went on and completed the purchase?

"*A.* Yes, because Mr. Gerken had said to me that he was going to acquire title, and I relied on Mr. Gerken's honest statement to that effect."

From this piece of the testimony it appears that the plaintiff had acquired full knowledge that the statements and representations made by the defendant relating to the strip consisting of the parking were untrue, before he, the plaintiff, completed the purchase and received and accepted the deed for the block. The plaintiff was at liberty at any time before he entered upon the performance of the contract to rescind it and bring his action for the damages sustained. But he chose to go on and complete the purchase with full knowledge of the fraud complained of. The law is well settled that if the party who has been defrauded in any way acquired knowledge of the fraud while the contract remains executory and thereafter executes the contract, he thereby condones the fraud and waives his right of action. Under such circumstances, he cannot successfully claim that he sustained damages by reason of the fraud. 20 *Cyc.* 92, and cases cited in note. If he discovers the existence of the fraud before he enters upon the performance of the contract, he must decide whether he will go on with it, or refuse to perform. Where the contract relates to the purchase of land, he cannot say that it is good, for the purpose of authorizing him to take the property, but not binding on him as to the price to be paid for it.

As was said in *Kingman* v. *Stoddard et al.,* 85 *Fed. Rep.* 740, cited in defendant's brief: "If one, by the imposition

of fraudulent practices, has been induced to purchase goods, and after their receipt discovers the fraud, he may rescind, or he may affirm and have his action for the deceit. But if, before the delivery of the goods, he has discovered the fraud, he may not then accept the goods, and still have an action for deceit. He had sustained no injury prior to the discovery of the fraud. He was under no legal obligation to execute a contract imposed upon him through fraud. Fraud without damage is not actionable. The loss arises from the acceptance of the goods. This being done with knowledge of the fraud, he has voluntarily brought upon himself the injury *'volenti non fit injuria.'* With respect to an executory contract voidable by reason of fraud, the defrauded party, with knowledge of the deceit practiced upon him, cannot play fast and loose. He cannot approbate and reprobate. He cannot, with knowledge of the fraud, speculate upon the advantages or disadvantages of the contract, receive its benefit, and at the same time repudiate its obligations."

It is to be observed that what was so aptly said by the learned judge in that case applies peculiarly and with great force to the transaction in controversy between the parties in this case.

But a most conclusive answer to the plaintiff's claim that he has been deceived and thereby damnified to the extent of the value of the loss of the strip of land, included in the parking, by reason of the fraudulent misrepresentations made by the defendant, is to be found in the deed itself.

After describing the property conveyed by metes and bounds, it concludes with a general description: "Bounded on the north by Deal Esplanade, on the west by Richmond avenue and on the south by Woodford road, and on the east by Norwood avenue." Then follows these significant provisions: "Nevertheless, nothing herein contained shall be taken or construed as granting or conveying unto the said party of the second part any of the land included within the said Deal Esplanade, Richmond avenue, Woodford road or Norwood avenue, but the same is expressly excepted therefrom." * * * "And also subject to the conditions and

restrictions as to the use of said premises; erecting buildings thereon, &c., as contained in a certain deed from the Atlantic Coast Realty Company to Annie M. Fischer, dated July 1st, 1907, and recorded in the office of the county clerk of Monmouth county, New Jersey, on the 3d day of July, 1907, in book 806, pages 27," &c.

By the contract of sale the defendant agreed to sell to the plaintiff the property described in the deed from Annie Fischer to the defendant, "subject to the conditions and restrictions mentioned in that deed, and also subject to the matters set forth in Schedule B of guaranty of title to the defendant of the said property by the New Jersey Title Guarantee and Trust Company, dated November 14th, 1907."

A reference to the deed to Annie M. Fischer and to Schedule B and the map of the Atlantic Coast Realty Company will show that the "parking" was excepted. Notwithstanding that the knowledge of all this came to the plaintiff before the transfer of the property was consummated, he elected to take a deed from the defendant with provisions in it which, in explicit language, clearly negatived that the defendant had any ownership whatever at any time in the strip of land called the "parking."

The legal effect of the acceptance of the deed by the plaintiff, under such circumstances, was a waiver of any right of action for deceit which he might have had by reason of the fraudulent misrepresentation by the defendant.

For the reasons given, the rule to show cause is made absolute.