**PH. CHALEYER, Inc., v. SIMON et al.**

Civ. No. 9860.

United States District Court
D. New Jersey.
March 17, 1950.

As Amended July 21, 1950.

Edmund L. Palmieri, New York City, Toner, Speakman & Crowley, Newark, N. J., by Thomas McKay, Jr., Newark, N. J., for plaintiff.

George I. Marcus, Hackensack, N. J., for defendants.

MEANEY, District Judge.

This is an action to cancel a lease and to recover damages based upon allegations that David Simon, acting for himself and in behalf of the other defendants, made false and deceitful representations which induced plaintiff to enter into a lease, led plaintiff to make expenditures for architectural services, and caused a loss of profits in plaintiff's business.

Defendants filed a counterclaim also seeking cancellation of the lease alleging that plaintiff has failed to fulfill the obligations of the lease, has signified an intention to breach the terms of the lease and abandon the premises, and has committed waste. Jurisdiction is found by reason of diversity of citizenship of the parties and the fact that the sum in controversy exceeds $3,000.

### Findings of Fact

1. The plaintiff, a New York corporation, engaged in the manufacture of perfumes, essential oils and aromatic flavors, sought the lease of a factory in New Jersey.

2. Negotiations were conducted during May and June of 1946, between plaintiff and David Simon, acting in behalf of all the defendants, for the lease of a factory building in Englewood, N. J., which was then in the process of construction.

3. Prior to the execution of the lease there was a discussion between Mr. Chaleyer, president of the plaintiff corporation, and David Simon in which Mr. Simon was informed of the type of business plaintiff was engaged in and the type of equipment plaintiff would use on the premises to be leased.

4. After the discussion Mr. Chaleyer determined that the building could be used for plaintiff's business.

5. There were no discussions about the Civilian Production Administration, hereinafter referred to as C P A.

6. Prior to entering into negotiations with the plaintiff corporation, the defendants had secured an authorization from the C P A to construct four buildings, one of which is now involved in this action. The application form contained the statements:

"Building being built for processing of food to be operated by a veteran of World War II.

"Building being built for the manufacture of kitchen cabinets providing employment for War Veterans and others."

7. Plaintiff's officers or agents were not informed of the basis on which the C P A approved the project until after the lease had been signed.

8. On June 27, 1946 a lease for 20 years was signed by the parties, the terms of which provided for completion and equipping of the building by plaintiff.

9. The C P A subsequently rejected plaintiff's application to complete the building because plaintiff did not qualify as a food processing industry.

### Discussion

A contract will be rescinded at the instance of one who has been induced to enter into it by a material misstatement

of the other party. Metropolitan Life Insurance Co. v. Babb, 128 N.J.Eq. 391, 16 A.2d 548. However, to warrant setting aside the contract, the fraud must be in the original transaction and not in non-fulfillment of the contract. Ebert v. Givas, 109 N.J.Eq. 495, 158 A. 412. To avoid a contract for fraud, the fraud must have induced execution of the contract. Bankers' Indemnity Ins. Co. v. Henry Henkel & Sons, 118 N.J.Eq. 244, 178 A. 565. From the evidence presented, the court cannot find that the statements made to the C P A were made to induce any action on the part of the plaintiff; they were not made to the plaintiff, and plaintiff did not become aware of them until after it had entered into the lease. Statements made after the lease had been executed, of course, are not actionable because they could not have influenced plaintiff's action in signing the lease.

The complaint alleges that the defendant David Simon falsely represented that the building could lawfully be leased to plaintiff and that it could be completed and equipped for plaintiff's business. The testimony does not correspond with this allegation. Chaleyer, president of the plaintiff corporation, testified that, during the negotiations prior to signing the lease, he made known to David Simon the purpose for which the building was to be used and that after discussion he determined that he could use the building in accordance with his plans. The court does not find from the testimony that Simon made any representations in this regard. Moreover, statements of law do not generally constitute fraud. Wiebke v. De Wyngaert, 88 N.J.Eq. 41, 101 A. 410. In Williston on Contracts, Rev.Ed.1937, § 1495, the author says, "A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; * * * It is an opinion * * *. In § 1496 Williston states that a prediction of future events is a statement of opinion and is not actionable. The general rule in New Jersey seems to be that fraud must relate to a present or pre-existing fact and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Norfolk & N. B. Hosiery Co. v. Arnold, 49 N.J.Eq. 390, 23 A. 514; Lembeck v. Gerken, 86 N.J.L. 111, 90 A. 698. See: 51 A.L.R., p. 49, note 7; Farwell v. Colonial Trust Co., 8 Cir., 147 F. 480. An exception to this rule exists where an expert possessed of superior knowledge renders an opinion he knows to be false. In such a case the representation is regarded as one of fact. Roemer v. Conlan, 52 N.J.L. 53, 18 A. 858. No claim is made here that any expressions of expert opinion were made, or that David Simon was possessed of superior knowledge. Plaintiff is to be charged with the same knowledge of what the law would or would not permit as were the defendants. Significant factually in this regard is plaintiff's application to the C P A for permission to complete the building; it was stated that the project was to used for the manufacture of food flavoring in condensed form and that the project was justified on the ground that the products were "essential for certain needs and aids in public health." From this it can be inferred that on November 21, 1946 and for some time prior thereto plaintiff was actually aware that in order to secure approval of its plans it would have to qualify its project as "essential."

The case of Wilday v. Panas, 122 N.J.L. 28, 3 A.2d 619, relied on by plaintiff, does not represent a departure from the general rules alluded to above since the representations in that case in part referred to existing boundaries as well as the assertion that plaintiff could use the premises for a specified purpose. Whether or not the boundaries were as defendants described them was a then ascertainable fact. In the light of the above authorities, it does not seem that plaintiff could succeed even if the allegations of the complaint were proved. Nor would plaintiff be able to recover on a theory of implied covenant. It has been recently held that a lessor does not impliedly covenant that the demised premises are suitable for the use which he is aware is intended by the lessee. Marx v. Standard Oil Co. of New Jersey, 6 N.J.Super. 39, 69 A.2d 748.

8

Defendant's counterclaim was not supported by sufficiently compelling evidence. Accordingly, it, too, must fail.

### Conclusions of Law

1. The evidence discloses no false representations upon which a claim for relief can be granted.

2. Even if the representations alleged had been made, they would afford no basis for relief.

3. Defendants are not entitled to relief on the counterclaim.

4. Neither party is entitled to the relief requested.

An order may be submitted in conformity herewith.